[No. A115057. First Dist., Div. Five. Apr. 9, 2008.]

DAVID SALMA, Cross-complainant and Respondent, v.
DANIEL J. CAPON, Cross-defendant and Appellant.

1278

## COUNSEL

DLA Piper US, Renee Glover Chantler and Marc C. Belloli for Cross-defendant and Appellant.

Law Offices of Janet Brayer and Janet Brayer for Cross-complainant and Respondent.

## OPINION

**STEVENS, J.**[*]—David Salma filed a cross-complaint against Daniel J. Capon which alleged, among other things, causes of action for conversion and intentional interference with prospective economic advantage. Capon filed a special motion to strike these claims pursuant to the anti-SLAPP (strategic lawsuit against public participation) statute, Code of Civil Procedure section 425.16. Before the trial court ruled on Capon's motion, Salma filed an amended cross-complaint that revised the two claims. Capon filed a second motion to strike the amended claims. The court ultimately struck the conversion claim in the original cross-complaint pursuant to section 425.16 but did

[*]Retired Associate Justice of the Court of Appeal, First Appellate District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

not strike the conversion claim in the amended cross-complaint or the intentional interference claims in either cross-complaint.

In this procedural circumstance, we consider whether a plaintiff or cross-complainant may avoid a pleadings challenge pursuant to Code of Civil Procedure section 425.16 by amending the challenged complaint or cross-complaint before the motion to strike is heard. We conclude he may not, and therefore we reverse in part and order dismissal of both the conversion and intentional interference claims. We also conclude the trial court properly considered cross-complainant Salma's verified pleadings in assessing Salma's probability of prevailing on the merits.

## BACKGROUND

In the underlying complaint, Capon charges that, due to the duress of an impending trustee's sale and the deceit of the purchasers, he and his estranged wife sold their Hillsborough home in November 2003 to Monopoly Game, LLC (Monopoly), for far less than it was worth. Following this sale, Monopoly sold the home to Salma. Capon alleges the equity purchase agreement prepared by Monopoly violated several provisions of the Home Equity Sales Contracts Act, Civil Code section 1695 et seq., the deed Monopoly recorded was invalid, Salma was not a bona fide purchaser of the property, and the sales agreement is subject to rescission.

The property was first sold on November 14, 2003. Under the purchase agreement, Capon and his wife had the right to occupy the home until December 20. On December 6, shortly after his wife moved out, two men allegedly came to the property to remove her personal property and assaulted Capon. On December 9, Capon was expelled and excluded from the home pursuant to a domestic violence restraining order, which was obtained by his wife with the assistance of a Monopoly officer. Capon was not given an opportunity to remove his personal property from the home, and on December 18 Monopoly sold the home to Salma.

In a declaration submitted in support of his motion to strike, Capon avers that he was struggling with drug addiction at the time of the sale. In June 2004, he entered recovery and began to investigate the circumstances of the sale. He learned his wife had received only $1,000 in cash from the sale, and the original mortgage records and utility accounts were still in his name, and the recorded deed had been altered without his knowledge or consent. On these facts and without legal advice, Capon concluded he was still a legal owner of the home. After applying for and obtaining a residency permit from

the Town of Hillsborough, Capon and his girlfriend moved into the home on August 17, 2004. In the following week, a police officer who knew about the December 2003 restraining order saw Capon on the property and placed him and his girlfriend under arrest.

Thereafter, Capon filed numerous complaints with the Hillsborough Police Department and the district attorney regarding the alleged fraudulent purchase of his home and retention of his personal property. He gathered public documents and contacted the title company involved in the sale in order to understand what happened. He also searched for an attorney.

In June 2005, Capon served and recorded a notice of rescission of the equity purchase agreement. In December, he filed his complaint and recorded a notice of lis pendens on the property. The complaint asserts numerous causes of action, including rescission of the sales agreement, breach of contract, and fraud.

Salma filed a cross-complaint on January 20, 2006. As to Capon, the cross-complaint asserted claims for declaratory relief, conversion (fourth cause of action), quiet title, trespass, and intentional interference with prospective economic advantage (seventh cause of action).[1] Capon then filed a special motion to strike the fourth and seventh causes of action in the cross-complaint (first motion to strike) on March 8. This motion was supported with a declaration and a request for judicial notice of the notices of rescission and lis pendens he had recorded.

Before the trial court could rule on Capon's special motion to strike, Salma filed a first amended cross-complaint that revised the fourth and seventh causes of action. Although Salma did not file any opposition to the special motion to strike, Capon nevertheless filed a "reply" brief on March 28. Then two days later, Salma filed a "sur-reply" brief to the motion without supporting evidence.

Capon's motion to strike was denied on the ground that he provided inadequate notice of the motion (April 4, 2006 order). This ruling prompted Capon to file a motion "for correction of clerical errors" and renewal of his anti-SLAPP motion on April 26, in which he argued that the court had misread the statutory notice requirements.

---

[1] Salma labels the cause of action "Interference with Prospective Business Advantage." We use the term "intentional interference with prospective economic advantage," which is the tort recognized in California case law. (See *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153 [131 Cal.Rptr.2d 29, 63 P.3d 937].)

On May 25, 2006, before the court ruled on his April 26 motion, Capon filed a special motion to strike the amended cross-complaint (second motion to strike), which he supported with another declaration. Salma opposed the motion without submitting supporting evidence.

Next, the trial court issued a second order (June 14, 2006 order). It reversed its April 4, 2006 ruling that Capon had provided insufficient notice on the first motion to strike and agreed to reconsider that motion. The court also ruled the first motion to strike was not mooted by the filing of the amended cross-complaint. (See *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1052 [18 Cal.Rptr.3d 882].)

On the merits of Capon's anti-SLAPP motion, the court concluded that most of the acts alleged in Salma's conversion and intentional interference claims "do not appear to be protected speech," but that Capon's filing of a notice of lis pendens was protected speech. Salma was found to have not established a probability of success on the conversion claim in the original cross-complaint because it pled conversion of real property, which is not a recognized tort. However, the court concluded that Salma had established a probability of success as to his intentional interference with prospective economic advantage cause of action. The court's ruling stated, "[t]he gravamen of the claim is that the negative disclosure (caused by the alleged wrongful conduct of Capon) which Salma will have to make on this property when he sells it will depress the market value of the property. Evidence is presented by the Capon Declaration itself to support that claim. The Court may also consider the verified pleading. Second, the evidence presented so far and the applicable law demonstrate that a viable claim exists."

Although Capon's motion to strike the conversion claim from the original cross-complaint was granted, the court denied his motion to strike as to the intentional interference claim. It then declared Capon's second motion to strike moot and overruled a demurrer Capon had filed to three causes of action in the amended cross-complaint, which included the fourth and seventh causes of action. As part of its ruling on the demurrer, the court commented, "It should be noted that the fourth cause of action in the First Amended [Cross-]Complaint is for conversion of *personal property* (while the original complaint alleged conversion of real property) and thus this is a new cause of action not alleged in the original complaint."[2]

---

[2] Capon's unopposed request for judicial notice of Civil Code section 1102.6 is granted. Salma's contested request for judicial notice of the trial court's May 2006 order expunging the lis pendens and this court's August 2006 order denying Capon's petition for a writ of mandate from the May 2006 order is denied. The orders are not relevant to the issues on appeal. (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358,

Discussion

Capon maintains the trial court erred by refusing to strike the intentional interference claims (count seven) in either cross-complaint or the conversion claim (count four) in the amended cross-complaint.

## I. *Special Motions to Strike*

Code of Civil Procedure section 425.16,[3] the anti-SLAPP[4] statute, provides in relevant part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

◼ Under the statute, the party moving to strike a cause of action has the initial burden to show that the cause of action arises from an act in furtherance of the moving party's right of petition or free speech. (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.) Once that burden is met, the burden shifts to the opposing party to demonstrate the probability that it will prevail on the claim. (§ 425.16, subd. (b)(1); *Equilon Enterprises,* at p. 67.) The appellate court independently reviews whether section 425.16 applies and whether the plaintiff has shown a probability of prevailing. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 [113 Cal.Rptr.2d 625].)

## II. *Intentional Interference with Prospective Economic Advantage*

We first consider whether the intentional interference claim in the original cross-complaint should have been dismissed pursuant to section 425.16. We then consider the effect of Salma's amendment of the claim.

### A. *Allegations of the Original Cross-complaint*

In the intentional interference with prospective economic advantage cause of action in the original cross-complaint, Salma pled that Capon "wrongfully has filed liens against the Property, trespassed upon the Property, and

---

875 P.2d 73], overruled on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1262 [63 Cal.Rptr.3d 418, 163 P.3d 106].)

[3] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[4] SLAPP is an acronym for strategic lawsuit against public participation. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57, fn. 1 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

disturbed the City of Hillsborough so as to deprive Cross-complainant of his ability to profit financially from the Property, refinance the Property, or sell the Property. Cross-complainant is informed and believes, and on that basis alleges, that CAPON is aware that his trespassing and odd behavior is a disclosure item that will have to be made to any prospective purchaser of the Property, and thus CAPON's actions have depressed the value of the Property. Cross-complainant is informed and believes, and on that basis alleges, that CAPON is aware that the Property is mortgaged, and that his actions have impacted Cross-complainant's ability to obtain financing for other properties owned by Cross-complainant and have damaged his reputation. Cross-complainant is informed and believes, and on that basis alleges, that CAPON is aware that lenders holding liens against the Property, named as defendants by him in his complaint, have and will demand that Cross-complainant defend and indemnify them."

The intentional interference claim also incorporated by reference allegations underlying the trespass and conversion claims in the original cross-complaint. The trespass claim was based on Capon's August 2004 reentry to the property. In the conversion cause of action, Salma alleged: "CAPON has by filing Notices of Recession [*sic*] and Lis Pendens relating to or on the Property, and by creating disturbances at the Town of Hillsborough Police Department where he claimed to be the legal owner of the Property and sought permits relating to the Property and demanded water bills and other information relating to the Property, placed a cloud on Cross-complainant's Property such that Cross-complainant has been effectively deprived of possession and use of the Property, and Cross-Defendant CAPON is and has tried to convert the Property to his own use. [¶] CAPON has failed to remove liens and clouds placed on the Property, despite demands to do so, and CAPON has effectively converted the Property to his use, denying Cross-complainant the opportunity to refinance or sell the Property, and forcing Cross-complainant to pay holding costs, all to Cross-complainant's damage."

We agree with Capon that the "filing of liens" in the intentional interference cause of action is a reference to Capon's filing or recording of the notices of lis pendens and rescission, which are described more fully in the conversion cause of action. Similarly, we understand the allegation that Capon "disturbed the City of Hillsborough" in the intentional interference cause of action as a reference to Capon's contacts with Hillsborough municipal departments that are described in the conversion cause of action. This construction of the claim is confirmed by Salma's subsequent clarifying amendments to the conversion cause of action.

The charged conduct underlying the original intentional interference claim, therefore, was Capon's (1) filing (i.e., recording) the notice of rescission; (2) filing and recording the notice of lis pendens; (3) naming Salma's lenders as defendants in the complaint; (4) contacting the Hillsborough Police Department and other Hillsborough municipal departments; and (5) trespassing on the property in August 2004.

### B. *Protected Activity*

Salma argues Capon did not satisfy the first prong of the anti-SLAPP analysis as to the intentional interference claim. In particular, he claims that Capon's trespass on the property and visits to the Hillsborough Police Department and other city offices were not protected acts under section 425.16. Capon argues that all the charged conduct except the trespass was protected activity, and that the cause of action accordingly came within the ambit of section 425.16.

### 1. *Whether Specific Alleged Acts Were Protected Activity*

As relevant here, section 425.16, subdivision (e) defines an " 'act in furtherance of a person's right of petition . . .' " to include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (§ 425.16, subd. (e).) Communications made in preparation for or in anticipation of the bringing of an action or other official proceeding fall within the ambit of these subdivisions. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*).)

Capon's filing of the notice of lis pendens in superior court and the naming of Salma's lenders as defendants in his lawsuit were writings made in a judicial proceeding. They are squarely covered by section 425.16, subdivision (e)(1). The filing of a notice of rescission also falls within section 425.16, subdivision (e)(2) because the notice was a legal prerequisite to Capon's filing of a rescission action. (Civ. Code, § 1695.14, subd. (b); see *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 282 [67 Cal.Rptr.3d 190] [notice terminating a tenancy is protected under § 425.16 because it was a legal prerequisite to bringing an unlawful detainer action]; *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1250–1251 [63 Cal.Rptr.3d 398, 163 P.3d 89] [notice of eviction is covered by litigation privilege as

communication regarding prospective litigation if litigation is contemplated in good faith and under serious consideration].)

Capon's contacts with municipal departments were only vaguely described in the cross-complaint, and we therefore refer to Capon's description of such conduct in his declaration to determine whether it was protected or unprotected activity. (See § 425.16, subd. (b)(2); *Brill Media Co., LLC v. TCW Group, Inc.* (2005) 132 Cal.App.4th 324, 330 [33 Cal.Rptr.3d 371] [court can examine declarations when making first-prong assessment under § 425.16].)

■ Several of these contacts were protected as requests for the initiation of official proceedings. Capon avers that he had "repeatedly spoken to both the Town of Hillsborough Police Department and the San Mateo DA's office about the fraud that led to the loss of my home since August, 2004. I have also attempted numerous times to file a formal written complaint seeking an investigation into it . . . ." He later filed reports to the police about personal property that was in his home in December 2003 and never returned to him. Capon also attempted to press charges against the persons who allegedly assaulted him in December 2003. All of these communications sought official investigations into perceived wrongdoing, which might culminate in criminal prosecution or other official proceedings. Such communications are protected by section 425.16. (See *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 368 [7 Cal.Rptr.3d 803, 81 P.3d 244] [statements made in preparation for or to prompt investigation that might result in the initiation of official proceedings protected by litigation privilege]; *Briggs, supra,* 19 Cal.4th at p. 1115 [communications in preparation for litigation are protected by both litigation privilege and § 425.16].)

■ Capon's other communications with municipal departments appear to have been part of an investigation into the circumstances of the sale of his home, which was undertaken in anticipation of litigation. Capon avers that between August 2004 and May 2005, he "put[] all [his] energy into investigating what had happened" regarding the sale of his home and he searched for a lawyer who would help him recover the property. In addition to contacting municipal departments, he contacted the title company involved in the sale of his home "to try and understand better what had happened, in the hopes of being able to get a lawyer to help me." Capon avers that in or about August 2004 he reviewed the recorded deed for the property and sought and obtained a residency permit. He contacted the Hillsborough Building Department to ask about remodeling work that was underway in the home and related building permits. He called the town's building inspector to inquire about the reinstallation of plumbing that had been removed from the

house. He contacted Hillsborough authorities to obtain copies of public records, including his application for a residency permit. Most if not all of these communications were part of Capon's unfolding investigation into the legal ownership of his home and the validity of the November 2003 sale. His averments establish that he was seriously considering litigation during this same time period. Communications that are made to prepare for good faith litigation, which is under serious consideration at the time of the communications, are protected by section 425.16. (*Briggs, supra*, 19 Cal.4th at p. 1115; *Action Apartment Assn., Inc. v. City of Santa Monica, supra*, 41 Cal.4th at p. 1251.)

■ Although Salma described Capon's contacts with municipal departments in the cross-complaint as "disturbances" and "odd behavior" and describes them in his appellate brief as "erratic and bizarre behavior," he produced no evidence to support these allegations. Capon affirmatively avers, "During my visits to the town offices in which I sought information and public records about what I believe to be my property, . . . I never created any scene or disturbance . . . ." In any event, protected activity loses the protection of section 425.16 only if the SLAPP defendant concedes or it is conclusively established that the conduct was illegal as a matter of law. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 305 [46 Cal.Rptr.3d 606, 139 P.3d 2].) There was no such showing here.

The remaining conduct underlying the intentional interference claim was Capon's trespass on the property in August 2004. Capon concedes this conduct was not protected activity under section 425.16.

In sum, Salma's intentional interference claim in the original cross-complaint was based on both protected activity (Capon's filing of the notices of lis pendens and rescission, naming Salma's lenders as defendants, and communicating with Hillsborough municipal departments) and unprotected activity (his moving back into the house in August 2004).

### 2. *Mixed Causes of Action*

■ A mixed cause of action is subject to section 425.16 if at least one of the underlying acts is protected conduct, unless the allegations of protected conduct are merely incidental to the unprotected activity. (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672 [35 Cal.Rptr.3d 31] (*Peregrine Funding*).) "[A] plaintiff cannot frustrate the purposes of the [anti-]SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one

'cause of action.' " (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308 [106 Cal.Rptr.2d 906].)[5]

The allegations of protected conduct in the original intentional interference claim were not merely incidental to the allegations of unprotected conduct. They represent the bulk of the allegations underlying the cause of action. Moreover, the harm purportedly caused by Capon's protected act of naming Salma's lenders as defendants in his complaint—Salma's liability to defend and indemnify the lenders—was different from the alleged harm resulting from the unprotected conduct of trespass, an impairment of Salma's ability to sell or finance the property. (See *Peregrine Funding, supra,* 133 Cal.App.4th at p. 673 [protected activity not peripheral to claim because complaint alleged plaintiffs suffered substantial losses due to the activity].) Further, when we consider the potential impairment to Salma's ability to sell or refinance the property, filing notices of rescission and lis pendens would provide greater notice of an ownership dispute to potential lenders or purchasers than would the unprotected conduct of Capon's trespass, which only potentially gave rise to a duty of disclosure.

Because the original intentional interference claim was based in part on protected activity that was not merely incidental to allegations of unprotected conduct, this seventh cause of action arose from protected activity and should have been stricken unless Salma demonstrated a probability of success on the merits.

## C. *Probability of Success on the Merits*

■ To establish a probability of success on the merits, a SLAPP plaintiff must state and substantiate a legally sufficient claim. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713–714 [54 Cal.Rptr.3d 775, 151 P.3d 1185].) " 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."

---

[5] Some cases state that mixed causes of action come within the ambit of section 425.16 if the gravamen or principal thrust of the claim is protected activity. (*California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1036–1037 [73 Cal.Rptr.3d 268]; *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 727 [64 Cal.Rptr.3d 867]; *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 802 [63 Cal.Rptr.3d 575]; *Gallanis-Politis v. Medina* (2007) 152 Cal.App.4th 600, 615 [61 Cal.Rptr.3d 701]; *Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519–520 [37 Cal.Rptr.3d 381]; *Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 416 [9 Cal.Rptr.3d 242]; *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 [6 Cal.Rptr.3d 494].) We agree with *Peregrine Funding* that this formulation of the test originated in language in a Supreme Court opinion that is not related to mixed causes of action. (*Peregrine Funding, supra,* 133 Cal.App.4th at pp. 672–673 & fn. 9.) Accordingly, we do not adopt the formulation.

[Citations.]' " (*Ibid.*) The " 'court considers the pleadings and evidentiary submissions of both' " parties (see § 425.16, subd. (b)(2)), but " 'does not *weigh* the credibility or comparative probative strength of [the] competing evidence.' " (*Taus v. Loftus*, at p. 714.)

The prima facie showing of merit must be made with evidence that is admissible at trial. (*Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1497 [45 Cal.Rptr.2d 624].) Unverified allegations in the pleadings or averments made on information and belief cannot make the showing. (*ComputerXpress, Inc. v. Jackson, supra,* 93 Cal.App.4th at p. 1010; *Evans,* at p. 1498.)

### 1. *Effect of Salma's Failure to Submit Evidence*

As we have mentioned, Salma did not produce any evidence in opposition to Capon's first motion to strike. The trial court relied on Capon's declarations and Salma's verified pleading to conclude that Salma demonstrated a probability of success on the merits of the claim. On this point, Capon claims his motion should have been granted because Salma failed to make the required evidentiary showing of probable success on the merits.

■ We see no reason why Capon's declaration could not be considered in assessing Salma's probability of prevailing on the claim. In summary judgment proceedings, gaps in a party's evidentiary showing may certainly be filled by the opposing party's evidence. (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 751 [41 Cal.Rptr.2d 719].) This rule is based on the statutory command that the court consider " 'all the papers' " in making its ruling. (*Ibid.,* italics omitted; see § 437c, subd. (c).) Section 425.16 similarly directs the court to consider both the "supporting and opposing affidavits" when ruling on a motion to strike. (§ 425.16, subd. (b)(2).) Capon's declaration was an "opposing affidavit" with respect to the second prong of the section 425.16 analysis.

■ The parties dispute whether the trial court appropriately considered Salma's verified pleadings in assessing probability of success. Several cases hold that a SLAPP plaintiff cannot rely on verified pleadings to demonstrate a probability of success. (See, e.g., *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 656 [49 Cal.Rptr.2d 620].)[6] Those holdings appear to be

---

[6] (See also *Gallant v. City of Carson* (2005) 128 Cal.App.4th 705, 710 [27 Cal.Rptr.3d 318]; *Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 613–614 [129 Cal.Rptr.2d 546]; *Schoendorf v. U.D. Registry, Inc.* (2002) 97 Cal.App.4th 227, 236 [118 Cal.Rptr.2d 313]; *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 672–673 [43 Cal.Rptr.3d 148].)

based on an inapt analogy to summary judgment proceedings. (42 Cal.App.4th at p. 656.) Verified pleadings may not be used to support or oppose summary judgment motions because the statute expressly restricts the types of evidence that can be used and does not include verified allegations. (*Ibid.*; § 437c, subd. (b)(1); Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2007) ¶ 10:19.1, p. 10-6 (rev. #1, 2007).) Unlike the summary judgment statute, section 425.16 expressly permits the court to consider the parties' pleadings as well as their declarations. (§ 425.16, subd. (b)(2).) Consequently, verified allegations based on the personal knowledge of the pleader may be considered in deciding a section 425.16 motion. Nevertheless, as we will explain, Salma's allegations fail to make the required showing.

### 2. *Sufficiency of the Evidence to Establish the Claim*

██ The elements of the tort of interference with prospective economic advantage are "(1) a relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) a wrongful act, apart from the interference itself, by the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." (*Arluk Medical Center Industrial Group, Inc. v. Dobler* (2004) 116 Cal.App.4th 1324, 1340–1341 [11 Cal.Rptr.3d 194], fn. omitted, citing *Korea Supply Co. v. Lockheed Martin Corp., supra*, 29 Cal.4th at pp. 1153–1154.)

██ As an initial matter, we note that Capon's protected activity came within the litigation privilege (Civ. Code, § 47, subd. (b)), and therefore was absolutely privileged. That is, it could not give rise to liability for intentional interference with prospective economic advantage or for any other tort except malicious prosecution. (*Hagberg v. California Federal Bank, supra*, 32 Cal.4th at p. 360.) This protected activity included Capon's filing of the notices of lis pendens and rescission, his complaints to the police department and the district attorney regarding defendant's allegedly unlawful acts, and his contacts with municipal departments to investigate and prepare for litigation. (*Action Apartment Assn., Inc. v. City of Santa Monica, supra*, 41 Cal.4th at p. 1251; *Hagberg*, at p. 368; *Briggs, supra*, 19 Cal.4th at p. 1115.) Again, although Salma describes Capon's contacts with municipal departments in the cross-complaint as "disturbances" and "odd behavior," he has presented no evidence to support these allegations and Capon affirmatively avers that he did not create any scene or disturbance. In any event, Salma cites no legal

authority that communications in anticipation of litigation lose their protection under Civil Code section 47, subdivision (b) if carried out in an odd manner. (See *Flatley v. Mauro, supra*, 39 Cal.4th at p. 325 [observing that even some forms of illegal litigation-related conduct are nevertheless absolutely privileged].)

To the extent any of Capon's communications with municipal departments were unprotected conduct because they were not made in anticipation of litigation, Salma has not shown they create a duty to make negative disclosures to potential lenders or purchasers. Again, he does not demonstrate they amounted to "disturbances" or "odd behavior." If the communications affected Salma's ability to sell or finance the property, it was because Capon was asserting ownership rights to the property, an effect that was indistinguishable from the effects of his privileged petitioning activity.

Only Capon's August 2004 trespass onto the property, therefore, possibly gave rise to an intentional interference claim. Salma argues this trespass created a negative disclosure item that would have to be disclosed to potential purchasers of the property. That disclosure item, he contends, depressed its value and impaired his ability to refinance the property. Capon, on the other hand, maintains the alleged trespass did not need to be disclosed since it did not constitute an ongoing nuisance.

We will assume for purposes of analysis that Salma had a duty to disclose the incident to prospective buyers if he put the property on the market. We will also assume Salma would have to disclose the incident if he attempted to finance or refinance the property or that a prospective lender would otherwise obtain knowledge of the incident. Salma nevertheless has failed to establish a probability of success on the merits of his claim. He has not established the first, fourth and fifth elements of the cause of action: a relationship with a third party with a probability of future economic benefit to plaintiff; actual disruption of the relationship; and economic harm to plaintiff proximately caused by the August 2004 incident.

 First, Salma did not show that he had existing relationships with potential purchasers or lenders that were disrupted by Capon's conduct. A plaintiff must establish an *existing* relationship to establish a claim for intentional interference with prospective economic advantage. (*Korea Supply Co. v. Lockheed Martin Corp., supra*, 29 Cal.4th at p. 1164; *Roth v. Rhodes* (1994) 25 Cal.App.4th 530, 546 [30 Cal.Rptr.2d 706] [allegation that defendant interfered with relations with future customers was insufficient].)[7] Although Capon acknowledges in his complaint and in his declaration that

---

[7] Contrary to Salma's contention, *Asia Investment Co. v. Borowski* does not hold that a loss of future buyers could sustain a claim for intentional interference with prospective economic advantage. The *Asia Investment* court held, "Asia's proposed amended complaint alleged only

Salma had existing relationships with lenders who held deeds of trust to the property, there is no evidence in the record that Salma attempted to refinance the property with these lenders or that any such attempts were disrupted by Capon's conduct.

■ Second, even assuming Salma sought refinancing from his existing lenders and those efforts were disrupted by the negative disclosure of Capon's conduct, Salma has not established that he suffered economic detriment from the disruption. He cites case law for the proposition that disclosures about past incidents *may* depress the value of a property. (*Reed v. King* (1983) 145 Cal.App.3d 261, 267 [193 Cal.Rptr. 130] (*Reed*); *Alexander v. McKnight* (1992) 7 Cal.App.4th 973, 980 [9 Cal.Rptr.2d 453].) The actual diminution of the value of a property, however, must be established by admissible evidence. In *Reed,* the court noted that the plaintiff specifically pled that the disclosure would have a significant and measurable effect on the market value of her property. (*Reed,* at p. 267.) Because the court was ruling on a demurrer, the allegation sufficed. The court went on to comment, "Whether Reed will be able to *prove* her allegation the decade-old multiple murder [in the home] has a significant effect on market value we cannot determine. If she is able to do so by *competent evidence* she is entitled to a favorable ruling on the issues of materiality and duty to disclose." (*Reed,* at p. 268, italics added, fns. omitted; see also *Alexander,* at p. 975 [reviewing damages award after bench trial, which presumably was based on admissible evidence].) Here, Salma had an obligation to present competent evidence that the disclosure would have a significant and measurable effect on the market value of the property and he failed to do so.

Rejecting Capon's arguments that Salma's alleged damages were too speculative, the court ruled: "Capon asserts that damages would be speculative, because there is no existing contractual relationship. But the law

the Borowskis' CEQA action interfered with the City's approval of Asia's subdivision. The relationship between Asia and the City cannot be characterized as an economic relationship. It was Asia's relationship to a class of as yet unknown purchasers which was the prospective business relationship. Asia did not, and was unable to, plead any actual disruption of this prospective business relationship. The entire period of time consumed from filing of the writ petition to its denial was about five weeks. . . . It is clear that Asia was not in a position to enter into an economic relationship (i.e., the sale of lots with anyone) with which the Borowskis could have tortiously interfered." (*Asia Investment Co. v. Borowski* (1982) 133 Cal.App.3d 832, 841 [184 Cal.Rptr. 317].) That is, the court observed that the *alleged* business relationship appeared to be Asia's prospective relationship with as yet unknown purchasers. The court did not decide whether such a relationship would have satisfied the first element of the cause of action had Asia satisfied the separate element of actual disruption of the relationship. Instead, the court held that Asia failed to satisfy the actual disruption element. Cases are not authority for issues not decided therein. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1211 [26 Cal.Rptr.2d 23, 864 P.2d 103].)

considers that in formulating the elements of a cause of action for interference with prospective economic advantage by making the additional requirement that the conduct be independently wrongful. *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 56 [77 Cal.Rptr.2d 709, 960 P.2d 513]. Salma has fulfilled that element."

■ The court correctly observed that a plaintiff pleading intentional interference with prospective economic advantage need not prove an existing *contractual* relationship and must prove that the defendant's act of interference was wrongful apart from the fact of the interference itself. (*Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 392–393 [45 Cal.Rptr.2d 436, 902 P.2d 740].) However, even after *Della Penna,* the tort of intentional interference with prospective economic advantage requires proof of economic harm to the plaintiff. (*Korea Supply Co. v. Lockheed Martin Corp., supra,* 29 Cal.4th at pp. 1153–1154; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §§ 731, 742, pp. 1059, 1072.) Salma has not proved that Capon's conduct caused him actual economic detriment.

In his verified cross-complaint, Salma pled (not solely on information and belief)[8] that as a result of Capon's conduct his ability to sell or refinance the property had been hindered; that he had lost and would continue to lose income; and that he was forced to pay tremendous carrying costs on the property. Even assuming these verified allegations were within Salma's personal knowledge, they did not establish his probability of prevailing on the claim. Salma alleged these economic effects as to all of the conduct underlying the cause of action, including the conduct privileged under Civil Code section 47, subdivision (b). He did not substantiate the allegation specifically with respect to Capon's alleged trespass. Therefore, he failed to establish a probability of success on his claim, which could only proceed on the ground of the trespass.

The motion to strike the intentional interference claim from the original cross-complaint should have been granted.

### D. *Amended Cross-complaint*

■ When a cause of action is dismissed pursuant to section 425.16, the plaintiff has no right to amend the claim. (*Simmons v. Allstate Ins. Co.* (2001)

---

[8] Most of the allegations in the intentional interference cause of action are made on information and belief. Those allegations not made on information and belief are primarily legal conclusions: that Capon's conduct was wrongful, malicious, oppressive, and done with a conscious disregard for Salma's rights. Salma also alleges that Capon acted with the intent to injure Salma financially. Even assuming this alleged fact was within Salma's personal knowledge, it does not supply the missing elements of the cause of action.

92 Cal.App.4th 1068, 1073 [112 Cal.Rptr.2d 397] (*Simmons*).) "Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy. Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading. This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend." (*Ibid.*)

 Here, unlike *Simmons, supra,* 92 Cal.App.4th 1068, Salma amended his cross-complaint *before* the court ruled on Capon's first motion to strike causes of action for conversion and intentional interference with prospective economic advantage. Capon then filed a separate motion to strike the amended pleadings. Nevertheless, *Simmons* supports automatic dismissal of the amended claims. Requiring the trial court to analyze the amended claims under section 425.16 simply because the claims were amended before the court ruled on the first motion to strike would cause all of the evils identified in *Simmons* and would undermine the legislative policy of early evaluation and expeditious resolution of claims arising from protected activity.

### III. *Conversion Claim*

The trial court dismissed the conversion claim in Salma's original cross-complaint but let a similar cause of action stand in the amended cross-complaint. Salma does not argue the court erred by dismissing the original claim. Rather, he claims the court dismissed that claim for failure to state a cause of action as if it were sustaining a demurrer. Consequently, Salma argues, he had a right to amend the cross-complaint to cure the pleading defects. Capon contends the court dismissed the conversion claim in the original cross-complaint pursuant to section 425.16 and that Salma had no right to amend his cross-complaint.

We agree with Capon. The court wrote, "The motion to strike the fourth cross-cause of action for conversion of real property in Salma's original cross-complaint, pursuant to C.C.P. Section 425.16 is GRANTED." Although the cause of action was found to be insufficient as a matter of law (because it pled conversion of real property), which is a ruling the court might have made in sustaining a demurrer, the ruling was made in the context of assessing Salma's probability of success under the second prong of section 425.16 analysis. That the analysis was similar to an analysis required for

ruling on a demurrer does not convert the court's dismissal under section 425.16 to a ruling sustaining a demurrer.

Moreover, the trial court's dismissal of the original conversion claim under section 425.16 was proper. The conversion cause of action was based upon Capon's filing of the notices of rescission and lis pendens and his contacts with municipal departments. For the reasons stated above, those acts are protected activity covered by section 425.16. (§ 425.16, subd. (e)(1), (2); *Hagberg v. California Federal Bank, supra*, 32 Cal.4th at p. 368; *Briggs, supra*, 19 Cal.4th at p. 1115; *Action Apartment Assn., Inc. v. City of Santa Monica, supra*, 41 Cal.4th at pp. 1250–1251.) They are also privileged under Civil Code section 47, subdivision (b). That is, they cannot give rise to tort liability. (*Hagberg*, at p. 368; *Briggs*, at p. 1115; *Action Apartment Assn., Inc.*, at pp. 1250–1251.) The trial court's dismissal of the original conversion claim was also correct because Salma alleged that Capon converted the Hillsborough house and parcel to his own use. The tort of conversion applies to personal property, not real property. (5 Witkin, Summary of Cal. Law, *supra*, Torts, § 699, p. 1023.)

As explained above, a SLAPP plaintiff does not have a right to amend a cause of action that has been dismissed pursuant to section 425.16. Having stricken the conversion claim in the original cross-complaint pursuant to section 425.16, the court should have also stricken, without analysis, the conversion claim in the amended cross-complaint. (*Simmons, supra*, 92 Cal.App.4th at p. 1073.)

Nevertheless, Salma argues that the cause of action for conversion in the amended cross-complaint was a new cause of action rather than an amendment of his conversion claim in the original cross-complaint. The trial court took this position in its June 14, 2006 Order. We disagree. Like the conversion claim in the original cross-complaint, the amendment alleges that "by filing a Notice of Recession [*sic*] . . . and a Noticy [*sic*] of Pendency of Action/Lis Pendens . . . [Capon] has effectively deprived Cross-Complainant of possession and use of the" Hillsborough property. The new pleading omits the allegations about Capon's contacts with municipal departments and adds language that he exercised dominion and control over personal property in the home, apparently when Capon reentered the home in August 2004. These new allegations revise or amend the cause of action, but do not convert it into an entirely new cause of action.

## DISPOSITION

The June 14, 2006 order is reversed in part. The seventh cause of action in Salma's January 20, 2006 original cross-complaint is dismissed without leave to amend pursuant to section 425.16. The fourth and seventh causes of action in Salma's March 21, 2006 amended cross-complaint are dismissed without leave to amend pursuant to section 425.16. Capon shall receive his costs on appeal.

Jones, P. J., and Needham, J., concurred.