Filed 10/16/25  Barkley v. Fahim CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DEBRA LYNN BARKLEY, | D084499 |
| Respondent, | |
| v. | (Super. Ct. No. 37-2024-00005877-CU-HR-NC) |
| ZOHRA FAHIM, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, William Y. Wood, Judge.  Affirmed in part and reversed in part.

Law Office of Jerold D. Friedman and Jerold D. Friedman for Appellant.

Debra Lynn Barkley, in pro. per., for Respondent.

## I. INTRODUCTION

Debra Lynn Barkley filed a civil harassment restraining order petition against Zohra Fahim.  Fahim filed a special motion to strike the petition

under the anti-SLAPP statute,[1] which the trial court denied.  In employing prong one of the required two-pronged analysis, the trial court determined Barkley's restraining order petition was based on four categories of acts: aggressive confrontations, trespassing, surveillance, and defamation.  The court found the first three were not subject to anti-SLAPP protection and denied the motion as to those three categories.  Moving to the second prong for the alleged defamation, the trial court determined Barkley showed a probability of success and therefore denied the motion as to the remaining category of acts.

On appeal, Fahim limits her claims of error to the trial court's prong-two analysis.  We therefore affirm the trial court's partial prong-one denial of the motion, regarding aggressive confrontations, trespassing, and surveillance.  As for prong two, we agree that Barkley failed to carry her burden in showing a probability of success regarding harassment by defamation and therefore reverse the trial court's ruling on that issue.

## II. BACKGROUND

Barkley owns a horse ranch in San Diego County.  Fahim is an animal rights activist.  Fahim believes Barkley abuses the horses on Barkley's property.

On February 8, 2024, Barkley filed a petition for a civil harassment restraining order against Fahim.  Barkley alleged that over that past year, Fahim repeatedly came to Barkley's properties and aggressively confronted Barkley, her husband, and her employees with false allegations of animal

---

[1]    "Code of Civil Procedure section 425.16 provides a procedure for the early dismissal of what are commonly known as SLAPP suits (strategic lawsuits against public participation)—litigation of a harassing nature, brought to challenge the exercise of protected free speech rights."  (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 665, fn. 3.)  All further undesignated statutory references are to the Code of Civil Procedure.

abuse. According to Barkley, Fahim screamed at Barkley and her fellow ranchers that they are disgusting and that Fahim is "coming after" them, and Fahim made similar threats in voicemails using expletives. Barkley also alleged Fahim trespassed and broke down fences, and "displayed alarming stalking behavior" by following Barkley and her husband to various locations, including their residence. Finally, Barkley alleged that Fahim took pictures of her properties and horses, publicizing false animal abuse allegations through social media and local news stations.

Barkley sought a restraining order protecting herself, her husband, and three employees. Barkley requested that the trial court issue a 200-yard stay-away order prohibiting Fahim from harassment and direct or indirect personal contact. It appears the trial court granted a temporary restraining order in response to Barkley's petition, but that order is not in the record.

A few months later, Fahim filed an anti-SLAPP motion against Barkley's restraining order petition. In her supporting declaration, Fahim stated she visited Barkley's ranch approximately six times in 2023 to investigate neighbors' animal abuse allegations. Fahim declared that she filed an administrative complaint regarding Barkley with the San Diego Department of Animal Services, and she publicized Barkley's mistreatment of her horses through social media and local news networks. Fahim denied entering Barkley's ranch, as well as the alleged stalking and harassing phone calls.

Barkley filed an opposition to the anti-SLAPP motion, asserting, "[t]he restraining order request by myself (and my Husband) is based upon harassment by the respondent coming to my property, . . . where the respondent screamed at myself and my ranch workers," and "[i]t is my contention that the visits and contact from the respondent to our horse ranch

3

is harassment." Barkley clarified, "[w]hile in the petition in this case I cited other items and publications of the respondent's free speech, I now know that we just want to be left alone." Barkley also repeatedly asserted that she did not want to limit Fahim's speech ("I have no desire to limit the speech of the respondent," "she can say what she wants," "I am not trying to keep the respondent from speaking," "[t]here are no statements we are trying to stop the respondent from saying," and "we are not trying to limit speech").

The only evidence Barkley submitted in support of her opposition was her own declaration stating the following:

> 2. I am not trying to limit the speech of the respondent in this case, despite the lengthy and obtuse filings by the respondent.
>
> 3. The respondent admits coming by our family property, at least six times, and each time has bothered me or my workers, constituting harassment.
>
> 4. The respondent has no idea about equine care and maintenance, and is only trying to further her non-profit.
>
> 5. I take care of my horses, and ranch work is not like domestic pet ownership, as it is completely different and the respondent cannot possibly know what it takes and has nothing in her moving papers indicating any such knowledge.
>
> 6. Yes horses die, this horse dying was because it was elderly and the baseless photographs of my horse with a head contusion and blood is an overreach, as that horse was looked at and treated by my equine veterinarian whom I have had a relationship for over 28 years, Dr. Robin Perry, and the horse is 100% healed now.
>
> 7. I have anxiety, headaches and other symptoms from the respondent trying to breach my privacy and private life and I cannot understand how she thinks I am trying to stop her from speaking.
>
> 8. This harassment must stop, and we just want to be left alone.

On June 10, 2024, the trial court denied Fahim's anti-SLAPP motion. The trial court divided the allegations in Barkley's petition into four categories of acts: "(1) aggressive confrontations; (2) trespassing; (3) surveillance; and (4) defamation (false accusations of animal abuse)."[2] The court found that the first three categories were not subject to anti-SLAPP protection because they did not arise from Fahim's constitutional rights of free speech or petition. The court therefore denied the motion as to those categories at the first prong of its analysis.

As for the fourth category, which involved Fahim's social media posts and statements to local news networks, the court determined it involved public statements in connection with an issue of public interest. However, in the second prong of its analysis, the court found that Barkley demonstrated a probability of prevailing on her restraining order request based on the alleged defamation, defeating the motion as to the fourth category of acts. The court relied on Barkley's statement in her declaration that she takes care of her horses, as well as Barkley's allegations in her restraining order petition that she loves her horses and provides them with proper care.

Based on this outcome, the trial court did not rule on Fahim's $76,889.90 request for attorney fees and costs. Fahim's timely notice of appeal followed.

## III. DISCUSSION

[2] When ruling on an anti-SLAPP motion, "courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010.)

*A.* *Standard of Review*

A trial court reviews an anti-SLAPP motion "using a two-prong test: (1) has the moving party 'made a threshold showing that the challenged cause of action arises from protected activity' [citation]; and, if it has, (2) has the nonmoving party demonstrated that the challenged cause of action has ' "minimal merit" ' by making 'a prima facie factual showing sufficient to sustain' a judgment in its favor?" (*Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1021–1022.)

"We review a trial court's ruling on a special motion to strike pursuant to section 425.16 under the de novo standard. [Citations.] 'In other words, we employ the same two-pronged procedure as the trial court in determining whether the anti-SLAPP motion was properly granted.' " (*Geragos v. Abelyan, supra,* 88 Cal.App.5th at p. 1020.) Nonetheless, "an appellant 'still bears the " 'burden of affirmatively demonstrating error.' " ' " (*Luo v. Volokh* (2024) 102 Cal.App.5th 1312, 1322.)

*B.* *We Do Not Address the Trial Court's Unchallenged Prong-one Ruling*

In her opening brief, Fahim does not challenge the trial court's determination under prong one of the anti-SLAPP analysis. Instead, she assumes the trial court found that all four claims underlying the restraining order request satisfied prong one, confining her appellate arguments to prong two and asserting that the trial court erred by finding that Barkley's claims had the minimal merit to survive the motion.[3] Fahim has misinterpreted the

---

3       Fahim also contends the "Trial Court lacked jurisdiction to grant Civil

record because the trial court determined that Barkley's claims of aggressive confrontations, trespassing, and surveillance did not survive prong one.

By proceeding in this manner, Fahim has failed to establish any error regarding prong one. (*Luo v. Volokh, supra,* 102 Cal.App.5th at p. 1322 ["Even though our standard of review is de novo, an appellant 'still bears the " 'burden of affirmatively demonstrating error.' " ' "]; *Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418 [" 'Issues do not have a life of their own: if they are not raised or supported by [substantive] argument or citation to authority, we consider the issues waived.' "].)[4] Accordingly, we affirm the trial court's prong-one ruling where it divided Barkley's restraining order petition into four categories and denied the motion as to the first three (aggressive confrontations, trespassing, and surveillance). We address only prong two and assess Barkley's probability of prevailing on the fourth category of acts (defamation).

---

Harassment Restraining Order for the protection of [Barkley's] employees," apparently challenging the temporary restraining order. However, Fahim did not appeal from the temporary restraining order; therefore, we do not assess that order's validity. Additionally, to the extent this argument applies to the prong-two probability of prevailing analysis, we do not address it based on the outcome we reach.

[4] At oral argument, Fahim argued that by contending the trial court's ruling was correct in her respondent's brief, Barkley opened the door for Fahim to address prong one in her reply brief. We disagree, and "[n]ew arguments may not be raised for the first time in an appellant's reply brief." (*High Sierra Rural Alliance v. County of Plumas* (2018) 29 Cal.App.5th 102, 111, fn. 2.)

*C.    Barkley Has Not Shown the Requisite Minimal Merit Under Prong Two Regarding Defamation*

    1.    <u>Prong Two Burden</u>

    "To establish a probability of prevailing, a nonmoving party must demonstrate that the claim is 'legally sufficient and factually substantiated'—that is, the claim has ' "minimal merit" ' and the factual showing supporting it, if accepted, 'would be sufficient to sustain a favorable judgment.' " (*Guracar v. Student Loan Solutions, LLC* (2025) 111 Cal.App.5th 330, 341.)  "The court does not weigh the plaintiff's evidence. However, the plaintiff may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence." (*San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 13 Cal.App.5th 76, 95.)

    2.    <u>Harassment Under Section 527.6 and Defamation</u>

    To obtain a restraining order under section 527.6, the petitioner must prove harassment by clear and convincing evidence.  (§ 527.6, subd. (i).) " 'Harassment' is . . . a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose.  The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).)[5] "Constitutionally protected activity is not included within the meaning of 'course of conduct.' "  (§ 527.6, subd. (b)(1).)

    " 'Defamation is an invasion of the interest in reputation.  The tort involves the intentional publication of a statement of fact which is false,

_____

[5]    Section 527.6 also defines harassment as "unlawful violence" or "a credible threat of violence," (§ 527.6, subd. (b)(3)) but those potential grounds are inapplicable in this case.

unprivileged, and has a natural tendency to injure or which causes special damage.' " (*Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 946.)

3. <u>Analysis</u>

In her opposition to the anti-SLAPP motion, Barkley asserted that her restraining order petition was "based upon harassment by the respondent coming to my property," and that "the visits and contact from the respondent to our horse ranch [are] harassment." Barkley did not argue that Fahim's social media posts and statements to journalists were harassing. Instead, she repeatedly asserted no desire to limit Fahim's speech, stating, "[w]hile in the petition in this case I cited other items and publications of the respondent's free speech, I now know that we just want to be left alone."

Barkley makes similar assertions on appeal, identifying the "conduct underlying the restraining order" as "uninvited visits to private property, yelling at me as a property owner, and my workers, and disruptive behavior." She does not mention Fahim's social media posts or local news coverage and states, "[t]here are no statements we are trying to stop Fahim from saying."

As can be seen, Barkley makes no attempt to demonstrate a legally sufficient claim of harassment based on defamation.[6] In fact, she appears to acknowledge that Fahim's publications on social media or to local news networks are constitutionally protected, which is excluded from "course of conduct" harassment. (§ 527.6, subd. (b)(1) & (3).) Barkley has therefore waived any contention that she has established a probability of prevailing on the defamation aspect of her restraining order request. (*Holden v. City of San Diego, supra,* 43 Cal.App.5th at p. 418 [" 'When an appellant fails to raise a point, . . . we treat the point as waived.' "].)

---

[6] This is consistent with our reading of Barkley's restraining order petition, which appears to reference defamation to provide context and not as a form of harassment.

9

Additionally, Barkley failed to present any evidence of harassment by defamation. She again clarified in her declaration that she is "not trying to limit the speech of the respondent in this case," which is inconsistent with any claim that Fahim's publications "seriously alarm[], annoy[], or harass[]" Barkley, her husband, or her employees. (§ 527.6, subd. (b)(3).) More importantly, the only evidence submitted by Barkley, which is her own declaration, does not mention any publications by Fahim.[7] Nor does it describe or attach any social media posts or local news coverage. Without describing any published false animal abuse allegations or explaining the effect those publications had, Barkley fails to present sufficient evidence to sustain a judgment in her favor regarding harassment by defamation.

In sum, whether by waiver or lack of evidentiary support, Barkley has not carried her burden on the second prong of the anti-SLAPP analysis. The trial court therefore erred in denying the motion regarding the claims of harassment by defamation.

D.    *Fahim's Request for a Remand Regarding Attorney Fees is Denied*

---

[7]    Although Barkley provided additional information in her verified restraining order petition, she may not rely on her pleadings to demonstrate the merit of her claim. (*San Diegans for Open Government v. San Diego State University Research Foundation, supra,* 13 Cal.App.5th at p. 95.) We note that *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1289–1290 states to the contrary, but we disagree with *Salma,* as does "every other published case on this issue" (*San Diegans for Open Government v. San Diego State University Research Foundation,* at p. 108, fn. 19) and "the leading practical treatise" (*Barker v. Fox & Associates* (2015) 240 Cal.App.4th 333, 351, fn. 7).

10

Fahim requests that we remand the matter so the trial court can readdress her request for attorney fees. We deny that request as unnecessary.

"[A] prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs." (§ 425.16, subd. (c)(1).) "A defendant who is only partially successful will generally be considered to have prevailed, but not if 'the results of the motion were so insignificant that [he or she] did not achieve any practical benefit from bringing the motion.' " (*Ross v. Seyfarth Shaw LLP* (2023) 96 Cal.App.5th 722, 732.) Barkley's defamation allegations were not the main thrust of her restraining order petition, but rather collateral to her claims of harassment. Nor does Fahim's partial success on her anti-SLAPP motion have any significant impact on Barkley's requested relief of a 200-yard stay-away order prohibiting direct or indirect personal contact. Accordingly, the results of the motion were minimal and insignificant, precluding Fahim from claiming attorney fees as the prevailing party.

## IV. DISPOSITION

The trial court's denial of the anti-SLAPP motion regarding aggressive confrontations, trespassing, and surveillance is affirmed.  The denial of the motion regarding defamation is reversed.  The parties are to bear their own costs on appeal.


RUBIN, J.

WE CONCUR:


IRION, Acting P. J.


DATO, J.

12