Filed 1/2/19; Modified and Certified for Publication 1/23/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SHERMAN XUMING ZHANG, et al., | B280047 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC608879) |
| v. | |
| E. PATRICK JENEVEIN III, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rita Miller, Judge.  Affirmed.

McKool Smith Hennigan, J. Michael Hennigan, Kirk D. Dillman and Robert J. King for Defendant and Appellant.

Dentons US and Michael H. Bierman for Plaintiffs and Respondents.

_____

# INTRODUCTION

E. Patrick Jenevein III, president of Tang Energy Group, Ltd., secretly recorded conversations with a business associate, Sherman Xuming Zhang, president of AVIC International USA, Inc. (AVIC USA), and later introduced the recordings as evidence in contractual arbitration. The arbitrators ultimately issued an award in favor of Tang Energy.

After the arbitration, Zhang and AVIC USA filed this action against Jenevein for invasion of privacy and eavesdropping on or recording confidential communications in violation of Penal Code sections 632 and 637.2. Jenevein filed a special motion to strike under Code of Civil Procedure section 425.16 (section 425.16). The trial court denied the motion, ruling that neither making the recordings nor using them as evidence in the arbitration was protected activity.

The trial court was correct. Because Jenevein's actions in recording the conversations and using the recordings in the arbitration were not in connection with a judicial or official proceeding authorized by law, they were not protected activities under section 425.16. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Jenevein Secretly Records Conversations with Zhang in Anticipation of Arbitration over the Soaring Wind Business Venture*

1. *The Soaring Wind Agreement*

In 2008 Tang Energy, Aviation Industry of China (AVIC HQ) through its subsidiary AVIC USA, and others formed

2

Soaring Wind Energy LLC (Soaring Wind) to develop wind farms and promote wind power equipment sales.[1]  The parties executed a contract titled "Limited Liability Company Agreement of Soaring Wind Energy, LLC" (the Soaring Wind agreement).  As part of the contract, the parties agreed that Soaring Wind's "Business" would be "to provide worldwide marketing of wind energy equipment, services, and materials related to wind energy including, but not limited to, marketing wind turbine generator blades and wind turbine generators and developing wind farms." The agreement included an exclusivity provision stating that, "during the term of this Agreement, each [party] shall only conduct activities constituting the Business in and through the Company and its Controlled subsidiaries."

The Soaring Wind agreement included an arbitration provision applying, with exceptions not applicable here, to "any controversy, dispute or claim arising under or related to" the agreement, including "whether any [p]erson is in . . . breach of any provision of" the agreement.  The agreement also provided: "Any decision by a majority of the Arbitrators shall be final, binding and non-appealable.  Any such decision may be filed in any court of competent jurisdiction and may be enforced . . . as a final judgment in such court.  There shall be no grounds for appeal of any arbitration award hereunder."

## 2.    *The Recorded Conversations*
In 2013 Jenevein learned AVIC HQ had created a number of subsidiaries he thought were competing with Soaring Wind.

---

[1]     When the parties signed the Soaring Wind agreement, AVIC USA was known as CATIC USA.  The entity changed its name prior to the arbitration.

3

Jenevein believed that by competing with Soaring Wind AVIC HQ breached the Soaring Wind agreement and that Tang Energy should demand arbitration on that claim. Jenevein also knew the relationship between AVIC HQ and its subsidiaries would be a central issue in an arbitration. Jenevein's theory was that "AVIC USA was in breach of the [Soaring Wind] Agreement if AVIC HQ controlled both AVIC USA and AVIC HQ's other subsidiaries that were engaged in direct competition with Soaring Wind." In anticipation of an arbitration, Jenevein gathered evidence to support Tang Energy's claim against AVIC HQ and AVIC USA by recording at least two conversations with Zhang about the corporate relationships.

First, on March 22, 2014 Jenevein recorded a conversation with Zhang during a meeting at a restaurant. According to Jenevein, Zhang and Jenevein spoke within earshot of other patrons, and neither of them made any effort to keep his voice down or to conceal the conversation. Zhang said he selected a table away from other people at the restaurant, and both men stopped talking when the server approached the table. Zhang intended the conversation to be private and believed that it was.

Second, on June 12, 2014 Jenevein recorded a telephone conference call in which Jenevein, Zhang, and five other people participated. Jenevein said he and Zhang were in a room together when Jenevein dialed into the conference call on a speakerphone and heard a "clearly audible" announcement the call was being recorded. Zhang denied hearing the announcement and recalled that "[n]either Jenevein nor anybody else stated that the call was being recorded."

4

B.    *Tang Energy Prevails in the Arbitration*

Tang Energy filed a demand for arbitration against AVIC HQ and AVIC USA and, subsequently, a claim on behalf of Soaring Wind.  Although the record does not include any formal rulings by the arbitrators, the parties agree the arbitrators allowed Tang Energy to introduce the recorded conversations as evidence in the arbitration.  The arbitrators found AVIC USA had marketed wind energy equipment, services, and materials in violation of the exclusivity provision of the Soaring Wind agreement.  The arbitrators awarded Tang Energy and Soaring Wind over $65 million in damages, attorneys' fees, and expenses.  A federal district court in Texas affirmed the arbitration award, and AVIC USA's appeal from that decision is pending in the United States Court of Appeals for the Fifth Circuit.

C.    *Zhang and AVIC USA Sue Jenevein*

Meanwhile, after the arbitrators issued their award, Zhang and AVIC USA filed this action against Jenevein, alleging a cause of action for eavesdropping on or recording confidential communications under Penal Code sections 632 and 637.2.[2]

---

[2]    Penal Code section 632, subdivision (a), provides:  "A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished . . . ."  Penal Code section 637.2, subdivision (a), provides:  "Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts:  [¶]  (1)

5

Zhang and AVIC USA alleged that Jenevein used the recorded conversations with Zhang as evidence against AVIC USA in the arbitration and that the recorded conversations "were an important part of the evidence the [arbitration] panel relied on and a material factor in the [panel's] decision." Zhang alleged a second cause of action for common law invasion of privacy. Zhang alleged: "The secret recordings of Sherman Zhang's conversations made by Patrick Jenevein betrayed Sherman Zhang's friendship for the purposes of injuring him and his company AVIC USA. The recordings and their use constituted an intentional intrusion into the private affairs of Sherman Zhang, and these actions are highly offensive to a reasonable person."

D.    *Jenevein Files a Special Motion To Strike*

Jenevein filed a special motion to strike pursuant to section 425.16. Jenevein argued that this action arose from the exercise of his constitutional right of petition or free speech in connection with an arbitration proceeding and that Zhang and AVIC USA could not establish a probability of prevailing. Zhang and AVIC USA argued in opposition to the motion that their claims did not arise from protected activity because contractual arbitration is not a judicial or official proceeding and because their claims arose from Zhang's acts of recording and not the subsequent use of the recordings in the arbitration. Zhang and AVIC USA also argued they had shown a probability of success on the merits of their claims. The trial court denied the motion, concluding neither recording the conversations nor using them as evidence in a

_____

Five thousand dollars ($5,000) per violation. [¶] (2) Three times the amount of actual damages, if any, sustained by the plaintiff."

6

contractual arbitration was protected activity.  Jenevein timely appealed.

## DISCUSSION

A.    *Section 425.16*

"'Section 425.16 provides, inter alia, that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." [Citation.]  "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . .""'" (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 642 (*Newport Harbor*).)

"Section 425.16 'provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity.' [Citation.]  'The Legislature enacted section 425.16 to prevent and deter "lawsuits [referred to as SLAPPs] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  [Citation.]

7

Because these meritless lawsuits seek to deplete "the defendant's energy" and drain "his or her resources" [citation], the Legislature sought "'to prevent SLAPPs by ending them early and without great cost to the SLAPP target'" [citation]. Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation. [Citation.] In doing so, section 425.16 seeks to limit the costs of defending against such a lawsuit.'" (*Newport Harbor*, *supra*, 4 Cal.5th at p. 642.)

Courts evaluate a special motion to strike under section 425.16 "through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*); see *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) We review a trial court's ruling on a special motion to strike under section 425.16 de novo. (*Park*, at p. 1067; see *Moss Bros. Toy, Inc. v. Ruiz* (2018) 27 Cal.App.5th 424, 433 ["we exercise our independent judgment in determining whether the challenged claim arises from protected activity"].) We consider "'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" (§ 425.16, subd. (b)(2); see *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67; *Moss Bros. Toy, Inc. v. Ruiz*, at p. 433].)

8

B.    *Contractual Arbitration Is Not a Judicial or Official Proceeding Under Section 425.16*

A moving defendant's initial burden is to show the plaintiff's cause of action arises from protected activity.  (*Park, supra,* 2 Cal.5th at p. 1061.)  "'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in [section 425.16,] subdivision (e).'"  (*Park*, at p. 1063; accord, *Moss Bros. Toy, Inc. v. Ruiz, supra*, 27 Cal.App.5th at p. 434.)

Jenevein argues the causes of action against him in this case arise from protected activity under section 425.16, subdivision (e)(1), because Zhang and AVIC USA alleged Jenevein recorded the conversations with Zhang to gather evidence in anticipation of, and used the recordings in, the arbitration and that an arbitration is a "judicial proceeding" or an "official proceeding authorized by law" within the meaning of that subdivision.  California law, however, is to the contrary.  As the court held in *Century 21 Chamberlain & Associates v. Haberman* (2009) 173 Cal.App.4th 1 (*Century 21*), private contractual arbitration is not a judicial proceeding under section 425.16.  (*Id.* at p. 5.)  Other courts have reached the same conclusion.  (See, e.g., *MMM Holdings, Inc. v. Reich* (2018) 21 Cal.App.5th 167, 179, fn. 12 ["an arbitrator is not a 'judicial body' and an arbitration proceeding is not an 'official proceeding' within the meaning of section 425.16, subdivisions (e)(1) and (e)(2)"]; *Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 703 ["'[a]rbitration is not a judicial proceeding'"]; see also *Moss Bros. Toys, Inc. v. Ruiz, supra,* 27

Cal.App.5th at p. 437 ["demanding private arbitration" is an "unprotected act"].)

So do we. Contractual arbitration is not a "judicial proceeding"; it is an alternative dispute resolution process that bypasses judicial proceedings. (See *Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916 ["'the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system'"]; *Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 955 [arbitration ""'"is alternative to, and independent of, the judicial [forum]"'""]; *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 713 [arbitration "does not invoke a judicial forum"]; *Century 21*, *supra,* 173 Cal.App.4th at p. 8 ["[a]rbitration is not a judicial proceeding—it is an alternative thereto"]; *Sheppard v. Lightpost Museum Fund* (2006) 146 Cal.App.4th 315, 323 ["[a]rbitration claims . . . are not filed in *courts* and they do not initiate *judicial* proceedings"].)

Nor is contractual arbitration an "official proceeding authorized by law" under section 425.16, subdivision (e)(1) or (e)(2). (See *Mission Beverage Co. v. Pabst Brewing Co., LLC*, *supra*, 15 Cal.App.5th at p. 703 ["[a]s a general rule, 'private contractual arbitration' is 'not . . . an "official proceeding authorized by law"' under . . . section 425.16, subdivision (e)(1) and (2)"]; *Century 21*, *supra*, 173 Cal.App.4th at p. 9 ["[n]or is arbitration an 'official proceeding authorized by law,' subject to anti-SLAPP protection"].) "When nongovernmental entities are involved, courts have limited 'official proceeding' anti-SLAPP protection to (1) quasi-judicial proceedings that are part of a 'comprehensive' statutory licensing scheme and 'subject to judicial review by administrative mandate' [citation], and (2) proceedings 'established by statute to address a particular type of

10

dispute.' [Citations.] Unlike hospital peer review, arbitration is not part of a comprehensive statutory licensing scheme and not reviewable by administrative mandate. And unlike mandatory fee arbitration, private arbitration is not required by statute." (*Century 21*, at p. 9; cf. *Mission Beverage Co. v. Pabst Brewing Co., LLC*, at p. 704 [statutorily mandated arbitration involving beer distribution under the Alcoholic Beverage Control Act]; *Mallard v. Progressive Choice Ins. Co.* (2010) 188 Cal.App.4th 531, 538-539 [statutorily mandated arbitration of an uninsured motorist claim].) The arbitration between Tang Energy and AVIC USA was contractual, not statutorily mandated.

Jenevein places primary reliance on *Manhattan Loft, LLC v. Mercury Liquors, Inc.* (2009) 173 Cal.App.4th 1040 (*Manhattan Loft*), which held that a party to an arbitration involving real property could not record a lis pendens because "a lis pendens may only be filed when an action in a court of law is pending." (*Id.* at p. 1045.) The court in *Manhattan Loft* reversed an order granting a special motion to strike a cause of action for slander of title against the parties that had improperly recorded the lis pendens because the court concluded the plaintiffs had shown a probability of prevailing. (*Id.* at pp. 1050-1054.) Before reaching that conclusion, however, the court in *Manhattan Loft* stated: "The filing of a notice of lis pendens falls squarely within th[e] definition" of protected activity in section 425.16, subdivision (e)(1) or (e)(2). (*Manhattan Loft*, at p. 1050.) The parties, however, did not appear to dispute this proposition. The plaintiff did not argue, and the court did not hold, that contractual arbitration is a judicial or official proceeding within the meaning of section 425.16. The plaintiff argued only that the filing of the lis pendens did not arise from protected activity because the lis

pendens were not related to the arbitration, an argument the court rejected because the "arbitration proceedings involved claims that affected title to and rights of possession" of the property at issue in the dispute. (*Manhattan Loft*, at p. 1050.) Indeed, the trial court here decided to follow the holding in *Century 21* rather than the language in *Manhattan Loft* because the trial court concluded the court in *Century 21* "analyzed this" issue whereas the court in *Manhattan Loft* "may not have even been focused on the issue" and did not "really decide[ ] it."

To be sure, the court's statement in *Manhattan Loft* that the "filing of a notice of lis pendens falls squarely within" the statutory definition of protected activity is true for lis pendens filed in connection with a pending lawsuit. (See *Park 100 Investment Group II, LLC v. Ryan* (2009) 180 Cal.App.4th 795, 805 [filing a lis pendens is protected activity under section 425.16 because "[c]ommunications in connection with matters related to a lawsuit come within the scope of the litigation privilege and are acts arising from this protected activity"]; *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1285 [party's "filing of the notice of lis pendens in superior court and the naming of . . . lenders as defendants in his lawsuit were writings made in a judicial proceeding" and "are squarely covered by section 425.16, subdivision (e)(1)"].) But it is not true for acts, like the filing of lis pendens, in connection with proceedings that are not legislative, executive, or judicial, or other official proceedings authorized by law. And the cases cited by the court in *Manhattan Loft* on this point involved the recording of lis pendens in connection with lawsuits, not arbitrations. (See *Manhattan Loft*, *supra*, 173 Cal.App.4th at p. 1050, citing *Jarrow*

12

*Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 736, fn. 6, and *Salma*, at p. 1285.)

Jenevein also cites *Greenberg v. Murray* (C.D.Cal., June 14, 2010, No. SACV 10-375 AG (CTx)) 2010 WL 2511309, where the plaintiff alleged the defendants secretly recorded at least six telephone conversations without the plaintiff's knowledge and disclosed them during an arbitration. The plaintiff further alleged "[t]he recordings 'adversely affected the outcome of the arbitration proceeding between the parties . . . which resulted in an award against [p]laintiff.'" (*Id.* at p. 1.) The federal district court stated: "The use of recordings in an arbitration proceeding is protected under [section] 425.16[, subdivisions] (e)(1) and (2)." (*Greenberg*, at p. 2.) The court, however, did not cite any authority for its statement, did not discuss *Century 21*, and issued its decision before *MMM Holdings, Inc. v. Reich, supra*, 21 Cal.App.5th 167 and *Mission Beverage Co. v. Pabst Brewing Co., LLC, supra*, 15 Cal.App.5th 686.

Jenevein argues: "Conduct in connection with arbitration involves the exercise of the right of petition because it is closely related to actual or potential litigation in the courts." Again, California law is to the contrary. That a party to an arbitration agreement may resort to the courts to compel arbitration or confirm or enforce an arbitration award does not convert the arbitration proceeding into a judicial or official proceeding within the meaning of section 425.16. (See *Mission Beverage Co. v. Pabst Brewing Co., LLC, supra,* 15 Cal.App.4th at p. 703 [contractual arbitration is not an official proceeding "even though arbitration awards are subject to judicial confirmation or vacation"]; *Century 21, supra,* 173 Cal.App.4th at pp. 7-8 [an

arbitration demand "does not '"fit[ ]"'" any of the four anti-SLAPP categories"].)[3]

Jenevein's reliance on the litigation privilege, Civil Code section 47, is misplaced. Section 425.16 and Civil Code section 47 have some similar language,[4] but the two statutes serve different purposes. As the court in *Century 21* explained in rejecting the same argument Jenevein makes here: "Statements made in arbitration may be protected by the litigation privilege. [Citation.] But statements protected by the litigation privilege are not necessarily protected by the anti-SLAPP statute. '[T]he litigation privilege and the anti-SLAPP statute are substantively different statutes that serve quite different purposes . . . .' [Citation.] 'The statutory construction rule . . . that identical statutory language should be interpreted the same way, applies only when the statutes in question cover "the same or an

---

[3] Jevevein asserts the court in "*Century 21* failed to analyze whether arbitration is 'conduct in connection with an issue under consideration . . . by a judicial body." Although Jenevein does not cite to subdivision (e)(2), the language he quotes is from that subdivision. Other than criticizing the court's decision in *Century 21* on this basis, however, Jenevein does not separately argue in his opening or reply briefs that the causes of action against him arise from a statement or writing in connection with an issue under consideration by a judicial body under subdivision (e)(2), as opposed to a written or oral statement made before a judicial or official proceeding authorized by law under subdivision (e)(2). Nor did he make such an argument in the trial court.

[4] Civil Code section 47, subdivision (b), defines a privileged publication or broadcast as one made in "any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law . . . ."

14

analogous subject" matter.  [Citations.]  That cannot be said of the [litigation] privilege . . . and the anti-SLAPP statute . . . .  The [litigation] privilege is a substantive rule of law, whereas the anti-SLAPP statute is a procedural device to screen out meritless claims.'"  (*Century 21, supra,* 173 Cal.App.4th at p. 10.)

## DISPOSITION

The order is affirmed.  Zhang and AVIC USA are to recover their costs on appeal.



SEGAL, J.

We concur:



PERLUSS, P. J.



FEUER, J.

15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SHERMAN XUMING ZHANG et al., | B280047 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC608879) |
| v. | **ORDER MODIFYING OPINION; AND DENYING PETITION FOR REHEARING; CERTIFYING OPINION FOR PUBLICATION; [NO CHANGE IN JUDGMENT]** |
| E. PATRICK JENEVEIN III, | |
| Defendant and Appellant. | |

The opinion filed January 2, 2019 is modified as follows:

1. On page 5, first full paragraph, line 6, insert the words "affiliates of" before the words "AVIC USA" so the sentence as modified reads:

The arbitrators found affiliates of AVIC USA had marketed wind energy equipment, services, and materials in violation of the exclusivity provision of the Soaring Wind agreement.

1

2.  On page 9, first sentence of the second full paragraph, lines 5 and 6, the words "the arbitration and that an arbitration" are changed to "an arbitration, which Jenevein contends"; and on lines 7 and 8, the words "that subdivision" are changed to "subdivision (e)(1)" so the sentence as modified reads:

    Jenevein argues the causes of action against him in this case arise from protected activity under section 425.16, subdivision (e)(1), because Zhang and AVIC USA alleged Jenevein recorded the conversations with Zhang to gather evidence in anticipation of, and used the recordings in, an arbitration, which Jenevein contends is a "judicial proceeding" or an "official proceeding authorized by law" within the meaning of subdivision (e)(1).

3.  On page 14, footnote 3, line 11, the second reference to "subdivision (e)(2)" should be changed to "subdivision (e)(1)" so the sentence as modified reads:

    Other than criticizing the court's decision in *Century 21* on this basis, however, Jenevein does not separately argue in his opening or reply briefs that the causes of action against him arise from a statement or writing in connection with an issue under consideration by a judicial body under subdivision (e)(2), as opposed to a written or oral statement made before a judicial or official proceeding authorized by law under subdivision (e)(1).

This order does not change the judgment. Respondents' petition for rehearing is denied.

The opinion filed January 2, 2019 was not certified for publication in the Official Reports. For good cause it now appears that the opinion, as modified, should be published in the Official Reports and it is so ordered.

---

PERLUSS, P. J.                    SEGAL, J.                    FEUER, J.

2